UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:04-CR-041 |
| ) | |
| WILLIE J. DAVIS, III ) | |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* third renewed motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 288].[1] The United States has responded in opposition the motion [docs. 292, 296], and the defendant has submitted a reply [doc. 299].[2]

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion will be denied.

## I. BACKGROUND

In August 2005, this Court sentenced the defendant to a net term of imprisonment of 240 months in this case, to be served consecutively to a 48-month revocation sentence in Docket No. 3:97-CR-064. In February 2009, the Court reduced the sentence in this case to 216 months, still to be served consecutively to the 48-month revocation sentence.

---

[1] The defendant's three prior compassionate release motions [docs. 279, 282, 286] were denied for failure to exhaust administrative remedies [docs. 281, 285, 287].

[2] On September 24, 2020, the defendant also filed a motion for appointment of counsel and for an additional 30 days to have a medical expert review his file. [Doc. 298]. The Court largely denied that motion but allowed the defendant until November 23, 2020, to file additional medical records. [Doc. 300]. On October 23, 2020, an attorney filed a notice of appearance on the defendant's behalf [doc. 301] but there has otherwise been no further activity in this case.

The defendant is presently housed at FCI Yazoo City Low with a projected release date of February 4, 2023. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 8, 2021). He now moves for compassionate release due to the COVID-19 pandemic, hypertension, an enlarged prostate, prediabetes, and high cholesterol.[3]

## II.  COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant

---

[3] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

2

to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[4] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has now previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 288]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, an enlarged prostate, prediabetes, and high cholesterol.

---

[4] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently two inmates and five staff positive for COVID-19, with 83 inmates and nine staff having recovered, with three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 8, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

5

release[.]").

BOP medical records show that the defendant is at increased risk of diabetes but does not yet actually have that disease. [Doc. 288]. He suffers from hypertension, which is presently controlled with medication. [*Id.*]. He has an enlarged prostate and that condition is treated with medication and is monitored by a urologist. [*Id.*]. The Court's review of the available medical records does not reveal a significant cholesterol problem. [Docs. 288, 296].

The BOP's SENTRY Report categorizes the defendant as Care Level 1. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Feb. 8, 2021). Additionally, while persons with hypertension might be at increased risk of serious illness from COVID-19, *see* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 8, 2021), the defendant's hypertension is presently under control. Therefore, on the record before it, the Court does not find that the defendant has shown his physical condition to be an "extraordinary and compelling" justification for compassionate release.

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant distributed kilogram quantities of cocaine. [Presentence Investigation Report ("PSR"), ¶¶ 31-36]. His criminal history includes convictions for assault (thrice, with two of the convictions involving attacks on

6

Case 3:04-cr-00041 Document 302 Filed 02/09/21 Page 6 of 8 PageID #: 597

law enforcement), vandalism, and controlled substance and driving offenses.  [*Id.*, ¶¶ 59-67].  The instant case is the defendant's <u>third</u> federal cocaine distribution conviction.  In the two prior cases, the defendant violated his conditions of supervision after being released from custody.  [*Id.*, ¶¶ 64, 66].  In his most recent PSR interview, the defendant admitted "that he used cocaine sporadically while on supervised release and would often use cocaine to get a 'boost' because he knew he was violating the law."  [*Id.*, ¶ 88].  These prior federal convictions for the very same conduct, coupled with the defendant's failure to behave while on supervision, counsel heavily against a grant of compassionate release.

The defendant's substance abuse history dates back to age 18.  [*Id.*].  His employment record is sporadic.  [*Id.*, ¶¶ 91-93].  The SENTRY Report lists one disciplinary sanction during his current incarceration, for possessing a hazardous tool in 2015.

SENTRY shows that the defendant has participated in vocational and educational programming during his current prison term, most particularly a 1,000-hour maintenance apprenticeship.  For that he is commended.  Lastly, according to SENTRY, the defendant is a low-security inmate who the BOP considers as presenting a medium risk of recidivism.

The Court has weighed the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion.  The Court is aware that the defendant has served the majority of his sentence and that he has some physical health issues.  Those medical conditions, however, are not uncommon and are neither "extraordinary" nor "compelling" such as to warrant the extreme remedy of compassionate release.

7

Moreover, the defendant's two prior federal convictions for the very same conduct for which he is now incarcerated, coupled with his unwillingness thus far to comply with conditions of supervised release, greatly trouble the Court. Compassionate release on these facts would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The pending compassionate release motion will accordingly be denied.

## III. CONCLUSION

As provided herein, the defendant's third renewed motion for compassionate release [doc. 288] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge